[Crim. No. 1700. Second Appellate District, Division Two.—January 22, 1929.]

THE PEOPLE, Respondent, v. HOYT W. SMITH et al., Defendants; HENRY J. PETERSON, Appellant.

374

A. Perry Harris for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

KEETCH, J., *pro tem.*—The appellant, Henry J. Peterson, together with Hoyt W. Smith and Thomas I. Boreman, was charged with burglary in an information filed by the district attorney of Los Angeles County. Peterson was found guilty of burglary in the second degree and Smith and Boreman were acquitted. This appeal is taken from the order denying Peterson's motion for a new trial and from the judgment of conviction.

Immediately prior to and at the time of his arrest Peterson was engaged in the business of repairing and renewing auto tops in the town of Sawtelle. Smith and Boreman were inmates of the Soldiers' Home at Sawtelle and were daily visitors at Peterson's shop, Martis Smith, a brother of the defendant Hoyt Smith, being employed by Peterson. Martis Smith owned a Chevrolet automobile which he sometimes used in running errands for Peterson. On April. 13, 1928, Peterson asked the defendant Hoyt Smith to drive him to

Santa Monica to look at a hair-picker, a machine used for renovating mattresses. Boreman asked if he might go along, and the three left in the Chevrolet. After looking at the hair-picker, which was in a garage in Santa Monica, Peterson procured the address of the owner of the machine and proceeded to his house. The owner was the complaining witness, John G. McNichols. The latter was absent from home at the time, and not finding anyone in the house the three went inside a screen porch which ran along one side of the building. In a toilet on this porch they discovered several rolls of auto top material and bow lining. According to the testimony of Smith and Boreman, appellant Peterson then and there stated that he had purchased this material a few days before and would have to have someone take it to his place of business. Upon returning to Peterson's shop the latter requested the defendant Smith to go back with the Chevrolet and get the material. Smith objected unless Peterson furnished the cost of gasoline and oil for the trip. This Peterson agreed to do, and promised to give Smith five dollars on the following morning. Smith and Boreman then drove back to the McNichols house and took all the material from the screen porch and brought it to Peterson's. A few days later, in company with police officers, McNichols went to appellant's place of business, where some of the material was found in the shop and a large portion of it in the basement of the building. McNichols identified the property as his, and upon the trial testified that the taking was without his knowledge or consent.

The first point of error claimed by appellant is in connection with the reading of the information before the jury. Peterson was charged with a prior conviction and on arraignment admitted the charge. It is contended that the clerk in reading the information to the jury, informed the jurors of the fact of the prior conviction. According to the record, after the reading of the accusatory paragraph relating to the crime for which Peterson was on trial the clerk began the reading of the next paragraph, as follows: "That before the commission of the offense charged in this information said defendant, Henry J. Peterson, in the superior court of the State of Washington"— At this point the clerk was interrupted by the district attorney as follows: "Just a moment, Mr. Clerk." Whereupon the court inter-

posed: "It is not necessary to read that portion, Mr. Clerk." No objection was made by counsel for appellant, nor was a request made of the court to instruct the jury to disregard the mistake, and the clerk then concluded the reading of the information, omitting any further reference to. the prior conviction. It is claimed .that this was in contravention of sections 1025 and 1093 of the Penal Code. In the former section it is provided, in connection with the taking of the plea of a prior conviction: "In case the defendant pleads not guilty and admits that he has suffered the previous conviction, the charge of the previous conviction must not be read to the jury, nor alluded to on the trial." In subdivision 1 of section 1093 it is provided that "in cases where it [the information] charges a previous conviction and the defendant has confessed the same, the clerk in reading it shall omit therefrom all that relates to such previous conviction."

In support of his contention that the foregoing was prejudicial appellant cites *People* v. *Meyer,* 73 Cal. 548 [15 Pac. 95]. In that case the court permitted the clerk to read, over defendant's objection, that portion of the information charging prior conviction, after such conviction had been admitted by the defendant on arraignment. There are two grounds which distinguish that case from the instant one: First, that the court permitted the reading, and, second, that it was done over the objection of counsel for the defendant. In the instant case it is apparent that as soon as the trial judge perceived that the clerk was about to make a mistake he immediately interrupted and stopped the latter from doing so. The most that can be said of the few words uttered by the clerk before he was interrupted is that they suggested that the defendant Peterson had been in the superior court of Washington, which in and of themselves conveyed no information to the jury that he had suffered a prior conviction, as contemplated and intended by the language of the sections quoted. In the second place, as we have already noted, defendant's counsel failed to object or request the court to instruct the jury on the matter, and it is too well settled to need authority that under such circumstances the appellant will not be heard to object for the first time on appeal.

█ It is next contended that the evidence does not support the verdict, and attention is called to the testimony of certain witnesses which counsel contends was "contradictory, most conflicting and false." Needless to say, it is the province of the jury alone to decide upon conflicting testimony. As is said in *People* v. *McKelvey*, 91 Cal. App. 684 [267 Pac. 390]: "To the jury, as the sole judges of the credibility of a witness, is assigned the duty of determining the weight to be given to the testimony of a witness, and, when the jury has performed this function and entered its decision, neither the trial court nor this court on review will interfere with that decision unless it appears that the verdict was without substantial foundation." To the same effect are the cases of *People* v. *Kelly*, 146 Cal. 119, 121 [79 Pac. 846]; *People* v. *Tom Woo*, 181 Cal. 315, 326 [184 Pac. 389]; *People* v. *Logan*, 123 Cal. 414, 415 [56 Pac. 56].

█ It is also urged that the court erred in admitting certain evidence of another offense outside of the issues charged, namely, the possession of wine by appellant. It appears from the testimony of a police officer that a trapdoor led down from Peterson's shop to the basement. Much of the automobile top material taken from the complaining witness' house was found in this basement. The officer testified: "I showed Peterson the material and he said yes, that was the material that come out from under the house; he said that he did not know how it got under the house; that he had gone down under the house some time in the night following my first visit there, to look after some wine that he had and found this automobile top material." If the testimony was objectionable counsel for the defendant failed to object or move the court to strike it out. "If he fails to proceed in accordance with this rule, it is presumed that the defendant waives any objection to the evidence he might have interposed thereto, and it must be concluded that he acquiesced in its remaining in the case." (8 Cal. Jur. 500, citing *People* v. *Durrant*, 116 Cal. 179 [48 Pac. 75].)

█ In connection with his contention that the evidence does not support the verdict, counsel for appellant raises the point that "Peterson was not present and did not participate in the taking of the auto top material." Beyond

378

this more statement no further comment, argument, or authority is offered. In the statement of facts we have already pointed out that upon the first visit to the complaining witness' house Peterson was present at the time of the entry and discovery of the auto top material in the toilet on the screen porch, and thereupon, according to the testimony of his two companions, he informed them that he had purchased this material a few days before and would have to get someone to take it to his place of business; that upon the return to Peterson's shop the latter requested the defendants Smith and Boreman to go back to the house and get the material. Upon their objecting because of the expense in the operation of the automobile Peterson promised to give them five dollars the next morning. Upon this promise, they testified, they returned to the house, leaving Peterson at his shop. This was in the afternoon and within a few hours of the first entry. McNichols, the owner of the house, was still absent therefrom, and Smith and Boreman again entered upon the premises, took the material and brought it back to Peterson, who took possession of it. The intent is governed by the circumstances and the conduct of the accused. The jury had a right to assume from the facts in the case that Peterson, as evidenced by his conduct, had formed the intent and purpose to gain entrance to the house and get possession of the material by inducing Smith and Boreman to immediately return and make the entry during the absence of the owner. This second visit, particularly, was an unlawful entry with the intent, in the mind of Peterson, at least, to commit the crime of larceny, and was burglary under the law of this state. Under the common law Peterson would have been an accessory before the fact, but under section 971 of our Penal Code it is provided that "a distinction between an accessory before the fact and a principal, and between principals in the first and second degree in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, *though not present*, shall hereafter be prosecuted, tried and punished as principals." The jury in the instant case found the defendants Smith and Boreman not guilty by their verdict, but had the latter been in fact accomplices under the law Peterson was a principal

notwithstanding the fact that he did not actually participate in the entry. His was the directing mind, and the defendants Smith and Boreman acted as his agents in the commission of the crime. Whether or not they acted innocently or had guilty knowledge does not change the situation so far as Peterson is concerned.

In *People* v. *Outeveras*, 48 Cal. 21, 24, the defendant was jointly charged with one Carter with burglary. In pursuance of an understanding between them Carter entered the house and stole some silver cups. Outeveras did not enter the house, but, at the request of Carter, waited outside until the latter came out with the stolen property. The two then went to the room they occupied together and endeavored to obliterate the names engraved upon the cups. The point raised on appeal was that under the evidence there was a fatal variance between the indictment charging the defendant Outeveras as a principal and the proof, which showed, at the most, that he was an accessory, aiding and abetting. The court, however, said: "At the common law an accessory at the fact might be indicted and convicted as a principal, for the common law declares that he who stands by, advises and encourages the murderer to give the blow, gives the blow himself as much as if he held the weapon in his own hands. Our legislature has gone one step further, and provided that he who, not being present, hath advised or encouraged the giving of the blow, hath given the blow as much as if he had stood by and encouraged it, or even had struck with his own hands. It is no more a fiction of law to declare that he gives the blow, by advising and encouraging it beforehand, than it is to affirm that he gives it by advising and encouraging it at the time. Both proceed upon the principle that what we advise or procure another to do, in the eye of the law, we do ourselves. All are principles, and as such should be indicted and punished."

By their verdict the jury in the instant case found that the defendants Smith and Boreman were innocent agents of Peterson in the commission of the crime. There does not appear to be any cases directly in point in this state where an innocent party committed a criminal act at the instigation of another who alone possessed the criminal intent. However, in Russell on Crimes, volume 1, page 165, the author

says: "When an offense is committed through the medium of an innocent agent, the employer, though absent when the act is done, is answerable as a principal. Thus, if a child under years of discretion, a madman, or any other person of defective mind, is incited to commit a murder or other crime, the incitor is the principal *ex necessitate*, though he were absent when the thing was done. . . . And if a man give another a forged note that the other may utter it, if the latter be ignorant of the note being forged, the uttering by the latter is the uttering of the former, though the former were absent at the time of the actual uttering."

McClain in his work on Criminal Law, volume 1, section 187, says: "The general maxim *'Qui facit per alium facit per se'* is applicable in criminal law to make one accountable for acts done for him by an agent under his instruction or by his consent. And in regard to the liability of the principal it is wholly immaterial whether the act is procured to be done through a guilty or an innocent agent. If the act is done through an innocent agent, the one who procures it to be done is guilty as principal, as though he had done the act himself. But if the agent or servant through whom the act is done is guilty, the principal or master is deemed an accessory before the fact only, unless present."

In Wharton's Criminal Law, volume 1, page 312, section 241, the author says: "A party also who acts through the medium of an innocent or insane person, or a slave, is guilty, *though absent*, as principal in first degree." (Italics ours.)

Based upon such respectable authorities, the conclusion follows that Peterson, as the directing and procuring mind, was the principal in the burglary though absent in person and not actually participating in the commission of the crime. It makes no difference if he stood in the street outside the house and directed the actions of the agent or did so from his shop several miles away.

Other contentions raised by counsel for appellant with reference to the admission of certain testimony are subject to the same criticism heretofore made. ■ All the objections are raised for the first time on appeal, with one exception, and therefore cannot be considered. (*Folsom* v. *Burns*, 91 Cal. App. 294 [266 Pac. 1007].) As to the one exception, no citation of authority or argument is offered by counsel

for appellant, and we are therefore not called to pass upon it. (*People* v. *Pilbro,* 85 Cal. App. 789 [260 Pac. 303].)

Judgment affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.