[Crim. No. 2026.   First Appellate District, Division Two.—June 16, 1938.]

In the Matter of the Application of PETER P. McDON-OUGH, for a Writ of Habeas Corpus.

Leon Samuels and Charles H. Brennan for Petitioner.

U. S. Webb, Attorney-General, Neil Cunningham, Deputy Attorney-General, Matthew Brady, District Attorney, and Leslie C. Gillen, Assistant District Attorney, for Respondent.

STURTEVANT, J.—This is an application for a writ of *habeas corpus*. The petitioner is charged with the crime of conspiring to violate chapter 8, division 1, part 2 of the

Insurance Code. (Stats. 1937, chap. 653.) The petitioner claims that in every respect, so far as his alleged offense is concerned, said chapter 8 is unconstitutional and void.

For many years prior to 1937 many different persons, natural and artificial, had been engaged in providing, for compensation, bail bonds in criminal cases. The petitioner had been so engaged for a period of thirty years and had built up an established business at a fixed place of business in the city and county of San Francisco. During the session of the legislature held in the year 1937, chapter 653 was enacted and took effect August 27, 1937. The material parts of said statute are in part addressed to the proprietor of the business and, secondly, his agents and solicitors. The pertinent sections are:

"Sec. 1830.20. A person shall not write or furnish bail bonds for compensation nor engage in the bail bond business in the State of California without first securing a permit so to do from the commissioner.

"Sec. 1830.24. The commissioner may issue a written permit to any person wishing to engage in the bail bond business upon application therefor accompanied by proof that the applicant is a fit and proper person to engage in such business.

"Sec. 1830.25. The commissioner may issue a permit to act as agent or solicitor for any person engaged in the bail bond business upon written application therefor on form prescribed by the commissioner, furnishing therewith proof that such applicant is of good moral character and is a fit and proper person to engage in such occupation.

"Sec. 1830.28. The commissioner may refuse to issue any permit applied for unless it is made to appear that the applicant therefor is of good moral character and a fit and proper person to engage in the bail bond business."

The power to revoke is not now involved and need not be discussed in this decision. In no place is it provided that notice will be given, that a hearing will be had, that an examination will be made, that any record of such examination will be made, or that any adjudication will be had.

Soon after the statute took effect a controversy arose as to whether the petitioner was subject to the provisions of said statute. Thereafter such acts were done by the petitioner that on the 25th day of March, 1938, an indictment was

returned against him charging him with the commission of the above-mentioned offense. Later he applied for a writ of *habeas corpus.*

The petitioner contends that his business is a valuable property right, that it is a lawful business, that he has a right to contract, that the exercise of the police power is constitutional only when promoting safety, health, morals, and general welfare, and that his rights will be protected under the provisions of the due process clause of the Fourteenth Amendment to the Constitution of the United States. Those claims will be conceded, but the question remains as to whether under the facts he has been in any manner deprived of any right under the due process clause of said amendment.

█ Earnestly contending that chapter 653 of the Statutes of 1937 purports to vest in the insurance commissioner power to hear and determine certain questions of fact, the petitioner contends that the statute does not provide for notice to be given to him or a hearing to be had on his application, that it does not provide a standard governing the actions of the insurance commissioner, and it fails to provide for right of appeal or judicial review. On its face the statute does not purport to authorize the insurance commissioner to hear and determine any question of fact. The function which the insurance commissioner performs is almost identical with the function performed by the county clerk when a litigant appears tendering his papers and asking for a summons, a writ of attachment, a writ of replevin, etc. In. *McKevitt* v. *City of Sacramento,* 55 Cal. App. 117, at page 124 [203 Pac. 132], the court said: ''Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence.'' They are commonly called administrative acts. See 2 C. J. S., p. 56, and numerous cases cited. But the authorities are numerous that no notice or hearing is required before an administrative officer acts. (*State Board of Milk Control* v. *Newark Milk Co.,* 118 N. J. Eq. 504 [179 Atl. 116].) In that case at pages 125, 126, the court said: ''In the absence of a specific constitutional

or statutory requirement thereof, notice of proceedings before the subordinate body exercising, as here, the administrative function is not requisite to valid action by that body. Nor is a hearing required in the absence of a provision therefor in the organic or statutory law. The due process clause of the Fourteenth Amendment imposes no such requirement; and, for obvious reasons, the like clauses in the state Constitution bear the same construction. As pointed out, the respondent board merely exercises the administrative function to effectuate the definitely declared legislative policy. Such regulation is purely a legislative function; and even when exercised by a subordinate body, upon which it is conferred, the notice of hearing essential in judicial proceedings is not indispensable to a valid exercise of the power. If the regulation undertaken is arbitrary or unreasonable, and, in the case of rates and charges imposed upon a business clothed with a public interest, confiscatory, relief may be had in the courts. A judicial review of administrative proceedings, on notice, satisfies the demand of the due process clauses. (*Home Telephone etc. Co.* v. *Los Angeles,* 211 U. S. 265 [29 Sup. Ct. 50, 53 L. Ed. 176].) The principle of due process is to secure the citizen against the exercise of arbitrary power. 'The omission (in a statute conferring such power upon a public utility commission) of the requirement of notice assimilates the procedure of the commission to that characterizing legislative action, and it is justified and sustained by those reasons of public policy upon which notice is dispensed with in legislation.' (*Randall Gas Co.* v. *Star Glass Co.,* 78 W. Va. 252, 253 [88 S. E. 840, 842]. See, also, 12 C. J. 1240, 1268, 1269, 1282; 51 C. J. 57.) '' The petitioner cites and relies on *In re Lambert,* 134 Cal. 626 [66 Pac. 851, 86 Am. St. Rep. 296, 55 L. R. A. 856], and kindred authorities. They are not in point because each of them discussed statutes which purported to authorize the rendition of judicial or *quasi*-judicial determination. ▆ Nor do we find any merit in the contention that the statute is invalid because no standard is prescribed for the guidance of the actions of the insurance commissioner. In several places the language is used that an applicant ''is of good moral character and is a fit and proper person''. Bearing in mind that we are construing a statute that is purely administrative, the standard quoted is sufficient. The question is not an open

one in this state. Almost the same phrase was used in the statute regulating the business of acting as real estate brokers, etc. (Stats. 1919, p. 1252.) In the case entitled *Riley* v. *Chambers*, 181 Cal. 589 [185 Pac. 855, 8 A. L. R. 418], the same contention was made that is made in the instant case. The point was carefully considered and the provisions of the statute were upheld. The same conclusion was reached on the same point in *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 553 [37 Sup. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514]. ■ The other attack on the validity of the statute because it fails to provide for right of appeal or judicial review may not be sustained. If, as contended by the petitioner, the statute authorized the insurance commissioner to render a final judgment, then his point might be sound, ''But the statute under consideration does not attempt to circumscribe the powers of a court, and it is not invalid simply because it does not specifically provide for access to the courts. Such access always exists if there is any arbitrary action on the part of the legislature or of a legislative agency which deprives a citizen of his constitutional rights.'' (Citing cases.) (*Highland Farms Dairy* v. *Agnew*, 16 Fed. Supp. 575, 585.) Furthermore section 12940 of the Insurance Code provides: ''Review by court. The acts and orders of the commissioner are subject to such review, or other action by a court of competent jurisdiction, as is permitted or authorized by law.''

■ Chapter 1, title 10, part 2 of the Penal Code (secs. 1268–1317) is entitled ''Bail''. That chapter is divided into eight articles. Articles I–IV specify when a defendant may be admitted to bail. Article V is headed ''Deposit Instead of Bail''. Articles VI, VII and VIII are addressed respectively to ''Surrender of the Defendant, Forfeiture of Bail or Deposit of Money, and Recommitment of the Defendant after having given Bail or Deposited Money instead of Bail''. The petitioner calls attention to the provisions of section 1830.34, which require an applicant to tender a bond ''conditioned upon the proper application and disposal of all moneys collected or received'' by the applicant. He then asserts that the requirement that a bail bond broker engaged in making deposits instead of putting up undertakings of bail is ''unreasonable and unnecessary''. He does not claim such a provision is uncon-

stitutional. Nor does he claim his business is wholly that of making deposits instead of bail. (Art. V.) Nor does he claim that the alleged wrongful act on which the indictment was based was an act of making a deposit instead of bail. Moreover, a reading and comparison of the provisions of the several articles comprising the chapter on bail discloses such an intermingling of rights and remedies that we are unable to say that, in the absence of specific authority, the general language contained in chapter 8 of the Insurance Code improperly included those persons engaged wholly or in part in making deposits instead of bail. As noted above the bail provided for in articles I, II and III consists wholly of written undertakings. That provided for in article IV may be cash, bonds, or equity in real estate—all furnished by a bail bond broker, or by the defendant personally. It was conceded at the oral argument that if a bail bond broker puts up an undertaking, cash, state or federal bonds, or an equity in real estate, it is the usual practice for him to require a deposit with him of collateral to protect him against loss. The petitioner's attack is reduced to the question: Is the requirement, to put up a bond conditioned upon the proper application and disposal of such collateral, "unreasonable and unnecessary"? We think a court may not as a matter of law answer that question; but it was for the legislature to determine the facts and act thereon. We must presume the legislature found cause for enacting section 1830.34 of the Insurance Code.

Pointing to the clause "of good moral character and is a fit and proper person", the petitioner contends that it has no pertinency to the general subject-matter of the statute and is therefore an improper exercise of the police power. Conceding that the subject-matter was approved in *Riley* v. *Chambers, supra,* the petitioner contends that in the case cited the court based its ruling on the fact that there was a certain fiduciary relation existing between a real estate agent and his client. Continuing, the petitioner contends that the same reasoning is not applicable to a bail bond broker. We think it is. It is sufficient to state that the general public is materially interested in the whole subject. The public is interested in seeing that those entitled to give bail are allowed to do so; that when bail is given that it should be good bail and not otherwise; that the person

admitted to bail conform to his obligations and appear duly when directed by the court to appear; and that in default the bail be promptly paid according to the obligation of the contract.

Again the petitioner contends that chapter 653, Statutes of 1937, is invalid as being in violation of section 24 of article IV of the state Constitution, that is, that the title does not indicate the entire subject-matter of the statute. In support of the point he calls to our attention that the Penal Code has sections dealing with the subject of "bail", that it also has other sections addressed to the subject of "deposits instead of bail". He then argues that although said chapter 653 specifically mentions bail that it does not specifically mention deposits instead of bail. We find no merit in the point. Bearing in mind that chapter and section headings and marginal notes contained in the codes are integral parts of the codes (23 Cal. Jur. 772), it is only necessary to turn to title 10, part 2 of the Penal Code to be convinced that the word "bail" is at times used in said code to include not only undertakings of bail, but also deposits made instead thereof. We think it is clear therefore that the word "bail" as used in chapter 653 was used in its general meaning and not in the limited meaning specified by the petitioner.

Finally the petitioner claims that the statute has been, as to him, administered arbitrarily and capriciously both by the insurance commissioner and the courts and that he has thereby been deprived of a valuable property right, that is, the right to conduct an established lawful business and occupation. Continuing he asserts such facts entitle him to apply for a writ of *habeas corpus* and that the courts should adjudge that the statute is invalid under the due process of law clause of the Fourteenth Amendment to the federal Constitution. (*Yick Wo.* v. *Hopkins,* 118 U. S. 356 [6 Sup. Ct. 1064, 30 L. Ed. 220].) That case is not in point. It involved the validity of two ordinances of San Francisco. It was contended and the court held that the ordinances were invalid by reason of the manner of their administration. That holding was based on the fact that, on their face, the ordinances purported to show that all questions of fact had been determined by the board of supervisors; that the determinations of the board were final; that the Supreme

Court of this state so held; that the federal circuit court held that it was bound by the construction which the Supreme Court of this state placed on its statutory enactments; and that by reason of such administration of said ordinances by the board of supervisors and by the courts the petitioners were being deprived of their property rights in violation of the Fourteenth Amendment. But in the instant case there is nothing on the face of chapter 8, *supra,* showing that the legislature had determined all of the facts; that the action by the insurance commissioner is final; that the courts have so held; or that application has been made to any court in any proceeding except in a *habeas corpus* proceeding and an application for an injunction. If, as claimed by him, the insurance commissioner has administered the statute arbitrarily and capriciously, the petitioner's remedy is to apply for a writ of mandate. (*Tulare Water Co.* v. *State Water Com.,* 187 Cal. 533 [202 Pac. 874].) In the rulings of the courts of which the petitioner complains we find nothing in excess of jurisdiction and neither do we find any error. Those rulings consisted of two applications which were denied. The petitioner applied to the superior court for a writ of *habeas corpus.* He made the same contentions in that proceeding he has made in this proceeding. The writ was denied. There was nothing arbitrary or capricious in the ruling. He also commenced an action to obtain an injunction to restrain the insurance commissioner from administering the statute. An injunction was denied. It is difficult to see how the ruling could have been otherwise. Under fundamental rules a court of equity will not take jurisdiction when the party has a complete remedy at law. In the instant case the petitioner has a plain, speedy, and adequate remedy as we have shown above.

&#9646; However, the petitioner vigorously contends that *mandamus* is not the proper remedy. He cites and relies on cases containing language to the effect that the writ will not issue to control discretion. He then points to the statutory provisions that the insurance commissioner may issue a permit or refuse one. He then argues that a proceeding in *mandamus* is not his proper remedy. In *Wood* v. *Strother,* 76 Cal. 545 [18 Pac. 766, 9 Am. St. Rep. 249], these identical contentions were made. Mr. Commissioner Hayne, with his characteristic ability and industry, made an exhaustive study

of the authorities. His opinion was adopted by the court. Commencing on page 553, we quote the conclusions as follows: ''In view of the foregoing cases, it seems a mere perversion of language to say that the writ will never issue to control judicial action, or to compel a tribunal to act in a particular way. It is by no means intended to assert that the writ could issue in this state in all the cases above referred to. The propriety of the issuance of the writ in any case must depend upon whether, under the law of the state where the litigation arises, the determination was intended to be final; and if not, upon whether the system of practice furnishes any other adequate remedy. These things might be different in different states; but the cases cited serve to show that the formulas above mentioned are not universally and literally true, and that it is dangerous to reason from them as if they were so. In every case the tribunal that is to act must determine in the first instance whether the case is a proper one for its action. And in our opinion the true tests are whether its determination is intended by law to be final; and if not, whether there is any other 'plain, speedy, and adequate remedy'. If the determination of the tribunal was intended to be final, it is plain that it cannot be disturbed, either in a *mandamus* proceeding or in any other way. If it was not intended to be final, but there is another 'plain, speedy, and adequate remedy', the writ cannot issue; for it was not designed to usurp the place of other remedies. But if the determination was not intended to be final, and there is no other adequate remedy, the writ must issue.'' The doctrine of that case has not, we believe, been departed from in any single case. On the other hand, it has been cited and followed in a long line of cases, one of the later ones being *Landsborough* v. *Kelly,* 1 Cal. (2d) 739, at page 744 [37 Pac. (2d) 93, 96 A. L. R. 707]. By reason of the similarity of the statutes involved we cite, in particular, the case entitled *Tulare Water Co.* v. *State Water Com.,* *supra.* Commencing on page 537 the court said: ''While it appears from the provisions above quoted that the act is intended to authorize an investigation, and the exercise of some degree of discretion by the Water Commission as to the sufficiency of the application, and as to the existence of water subject to appropriation, no formal hearing is prescribed, and no authority granted to judicially determine

the fact as to unappropriated water, or to adjudicate conflicting claims that might exist thereto. . . . Under such conditions *mandamus* is a proper remedy to compel a reasonable exercise of such discretionary powers as are granted by the act. It is well settled that *mandamus* will issue to correct an abuse of discretion, if the case is otherwise proper. (*Wood* v. *Strother,* 76 Cal. 545 [9 Am. St. Rep. 249, 18 Pac. 766] ; *Ex parte Bradley,* 7 Wall. 364, 377 [19 L. Ed. 214] ; see, also, Rose's U. S. Notes; *State* v. *Lafayette Co.,* 41 Mo. 221, 226; *Village of Glencoe* v. *People,* 78 Ill. 382; *People* v. *Superior Court,* 10 Wend. (N. Y.) 285 ; *Hammel* v. *Neylan,* 31 Cal. App. 21, 22 [159 Pac. 618].) As in all cases of ministerial duty the obligation to perform depends upon the determination of the existence of certain prerequisite facts, but where such facts exist, the duty is mandatory. Mere authority to decide as to the existence of a given fact does not necessarily take the official or board so deciding beyond the reach of a writ of mandate, especially where there is no remedy by appeal."

As we have held that the petitioner's remedy is to apply for a writ of *mandamus,* it is appropriate to comment in brief on the proof that may be offered and received in that proceeding. In the record before us it appears that when the petitioner applied for a permit the insurance commissioner held a hearing. At that hearing the petitioner contends the insurance commissioner received evidence on the issue whether the applicant was "of good moral character and a fit and proper person". It is further contended that evidence for and against the applicant was so received. The record does not disclose what that evidence was. However, the petitioner contends that there was no evidence that justified the insurance commissioner in refusing petitioner a permit. Where, as here, the statute does not provide for a hearing before the administrative officer and does not provide nor authorize a final determination by such officer, in any *mandamus* proceeding commenced for the purpose of obtaining a writ commanding the issuance of a permit the issue must be heard and determined in the *mandamus* proceeding under legal rules of evidence and in accordance with the facts as proved. (*Wood* v. *Strother, supra.*) That case involved these facts. A street assessment proceeding had been had. Strother was the auditor. The statute provided that the

warrant should be countersigned by the auditor, "who, before countersigning it, shall examine the contract, the steps taken previous thereto, and the record of assessments, and must be satisfied that the proceedings have been legal and fair". A writ issued. The auditor alleged that he was not "satisfied", etc. After hearing the evidence in the *mandamus* proceeding the court made a finding that the street assessment proceeding had "been legal and fair". On appeal that finding was sustained and enforced. Where, as here, the action of the administrative officer was not intended to be final, the rule stated in *Wood* v. *Strother, supra,* controls.

We think it is clear that the statute before us is not vulnerable to any of the attacks made by the petitioner, that it is not invalid, and that the petitioner is not illegally restrained of his liberty.

The application for a writ of *habeas corpus* is discharged and the petitioner is remanded.

Nourse, P. J., and Spence, J., concurred.