[Civ. No. 14751.   First Dist., Div. Two.   Jan. 29, 1952.]

ALEEN SHORB, Appellant, v. JOSEPH W. BARKLEY, as County Surveyor, etc., Respondent.

Carlson, Collins, Gordon & Bold, George R. Gordon and Steven H. Welch, Jr., for Appellant.

Francis W. Collins, District Attorney, and Charles L. Hemmings, Deputy District Attorney, for Respondent.

JONES, J. pro tem.—This appeal is taken from a judgment denying a writ of mandate against the county surveyor of Contra Costa County. The appellant and petitioner is the owner of a tract of land in the unincorporated part of that county near Martinez. This property she proposed to subdivide into lots and blocks and to that end filed a tentative map of the proposed subdivision with Contra Costa County Planning Commission. The subdivision as proposed consists of a single tier of lots. These lots all front on Pacheco Road, an established highway leading from Martinez to Pacheco. There are 19 of the lots with a total frontage on the highway of 1851.56 feet. One has a frontage of 60.74 feet; another 88.86 feet; a third 101.96 feet; and the frontage of the other 16 is 100 feet. The lots vary in depth from 162.82 feet to 349.24 feet, and on the rear abut lands of the United States government. No streets, ways, alleys or highways are shown on the tentative map. Access to each lot is limited to the frontage on Pacheco Road.

At the time that the tentative map came on for hearing before the planning commission, the point was raised that in 1941 a landslide had occurred on the property. Evidence was presented to the effect that this slide originated on the adjoining property of the federal government and that the debris had slipped over onto the Shorb property. The contour map and the photograph of the premises show that the natural slope of the ground is from the property of the federal government in the rear toward Pacheo Road in front. Further evidence was presented to show that since the slide Mrs. Shorb has graded her property and distributed the debris. In addition to scattering the debris she has constructed a road and ditch across the rear of the lots to afford drainage and to prevent a recurrence of the slide condition. With these facts before it the planning commission approved the tentative map of the subdivision upon condition that the real estate commission be given notice of the tendency of the lands to slide. Notice was given orally and the final map was approved. No improvements of any kind were ever designated by the planning commission to be made by the subdivider.

When the final map was presented to the county surveyor he refused to approve it on the ground that the provisions of the local ordinance had not been complied with. The appellant then filed her petition in the superior court for a writ of mandate in which petition she alleged full compliance with all local ordinances. Respondent denied generally the allega-

tions of the petition and alleged affirmatively in his answer that the lots are not properly drained and are subject to landslides.

Section 11593 of the Business and Professions Code provides that "(a) If a subdivision lies within an unincorporated area, a certificate by the county surveyor . . . is required." This section further provides that the appropriate official (the county surveyor) shall state that:

"(1) He has examined the map.

"(2) The subdivision as shown is substantially the same as it appeared on the tentative map, and any approved alterations thereof.

"(3) All provisions of this chapter and of any local ordinance applicable at the time of approval of the tentative map have been complied with.

"(4) He is satisfied that the map is technically correct."

It is this section taken in connection with the local ordinance that respondent relies upon as authority for refusing to certify the final map.

The local ordinance governing subdivisions in Contra Costa County is No. 217 of that county as amended. Section 9 of this ordinance provides, first, that "All parcels of land shown on any final map and intended for any public use shall be offered for dedication" etc., and secondly, that "The subdivider shall improve all streets, highways and ways which are a part of the subdivision."

Then follows this language in the same paragraph: "Such improvements, as designated by the Planning Commission, shall conform to the following requirements:

"(1) All streets shall be paved . . .

"(2) Adequate water supply.

"(3) Such sanitary facilities as may be necessary to protect the public health and to serve the public convenience.

"(4) All lots in the proposed subdivision shall be properly drained and in all cases there shall be installed such structures as are necessary to the use and the proper drainage of the streets, highways and ways in the subdivision and to the public safety.

"(5) Prior to construction of any of the proposed improvements in the subdivision, the county surveyor shall review and approve the design, layout and alignment." There is then set forth in requirement (5) provision for access to the work by the county surveyor for purposes of inspection,

authorization for the subdivider to proceed, stoppage of work until requirements are met, certification of completion, etc.

The only question which confronts us, however, is whether the ordinance in terms requires the subdivider without designation by the planning commission to drain the lots so as to avoid landslides. On account of the frontage of all of the lots upon Pacheco Road no streets or ways are laid out in the proposed subdivision. No question is presented of dedication or improvement of streets or ways, nor does the respondent make any point with respect to an adequate water supply or sanitary facilities, or with respect to surface drainage. He contends only that the lots are not drained so as to prevent the land from sliding. His position is that the ordinance requires the subdivider to drain the lots regardless of any action on the part of the planning commission, and that until this improvement is made the ordinance has not been complied with and he is not required to sign the certificate.

The appellant on the other hand takes the position that the ordinance does not require such an improvement to be made by the subdivider unless the planning commission *designates* it as an improvement to be so made. In support of her position she points to section 2 of the ordinance, which in part reads: "At the time of its action on the tentative map the Planning Commission *shall also designate* the improvements which will be required under provisions of section 9 of this ordinance." (Italics added.)

The pertinent portion of section 9 reads: "Such improvements, as *designated* by the Planning Commission, shall conform to the following requirements: (Italics added.)

"(4) All lots in the proposed subdivision shall be properly drained."

Appellant argues that section 2 expressly directs the planning commission to designate the improvements which will be required in any subdivision, and that under section 9 no one of the improvements enumerated therein is required unless the planning commission designates it. With this contention we are constrained to agree.

Section 2 clearly and expressly directs the planning commission to designate the improvements which will be required under section 9, and section 9, while enumerating the improvements which may be required, makes them all dependent upon designation by the planning commission. In construing the ordinance its meaning is to be arrived at as is the meaning of any other enactment. In all such cases the problem of the

court is to ascertain the legislative intent. In *Caminetti* v. *Pacific Mut. L. Ins. Co.*, 22 Cal.2d 344, 353 [139 P.2d 908], it is said: "The intent of the Legislature must be ascertained from the language of the enactment and where, as here, the language is clear, there can be no room for interpretation. (*First Congregational Church* v. *County of Los Angeles*, 9 Cal.2d 591, 594 [71 P.2d 1106]; *Riley* v. *Robbins*, 1 Cal.2d 285, 287 [34 P.2d 715]; *People* v. *Stanley*, 193 Cal. 428, 431 [225 P. 1].)" ■ Words used in an ordinary sense in one part of an enactment are to be construed in the same sense in another in the absence of express definition. ■ The word "designate" in the phrase "the Planning Commission shall . . . designate" found in section 2 must be deemed to have been used in the same sense as the word "designated" in the phrase "as designated by the Planning Commission" found in section 9, which is to say "to point out" in the one case and "as having been pointed out" in the other. ■ An intent different from that expressed may not be deduced by giving a different meaning to the same expressions or adding words which are not used. In the case of *In re Miller*, 31 Cal.2d 191, 199 [187 P.2d 722], the court said: "Words may not be inserted in a statute under the guise of interpretation. (Code Civ. Proc., § 1858; *Seaboard Acceptance Corp* v. *Shay*, 214 Cal. 361, 365-366 [5 P.2d 882].) Rather, 'it is the function of the courts to construe and apply the law as it is enacted and not to add thereto nor detract therefrom.' (*Pacific Coast Joint Stock Land Bank of San Francisco* v. *Roberts*, 16 Cal.2d 800, 805 [108 P.2d 439].)"

■ Since the planning commission did not designate drainage to avoid possible landslides as a required improvement to be made by the subdivider, she has fully complied with the local ordinance and there is no room for the exercise of any discretion in the premises by the respondent. Under these facts mandate is the proper remedy. (Code Civ. Proc., § 1085; *Drummey* v. *State Board of Funeral Directors & Embalmers*, 13 Cal.2d 75 [87 P.2d 848]; *Wood* v. *Strother*, 76 Cal. 545 [18 P. 766, 9 Am.St.Rep. 249].) It is held in the case of *In re McDonough*, 27 Cal.App.2d 155, 165 [80 P.2d 485], that mandamus is a proper remedy to compel a reasonable exercise of discretionary powers, and in the same case it is said that "It is well settled that mandamus will issue to correct an abuse of discretion, if the case is otherwise proper. (*Wood* v. *Strother*, 76 Cal. 545 [18 P. 766, 9 Am.St.Rep. 249]; *Ex parte Bradley*, 7 Wall. 364, 377 [19 L.Ed. 214]; see, also,

878

Rose's U. S. Notes; *State* v. *Lafayette Co.*, 41 Mo. 221, 226; *Village of Glencoe* v. *People*, 78 Ill. 382; *People* v. *Superior Court*, 10 Wend. (N.Y.) 285; *Hammel* v. *Neylan*, 31 Cal.App. 21, 22 [159 P. 618].) ''

The additional point is made by the respondent that the notice to the real estate commission upon which approval of the final map was conditioned was intended to be in writing, but that the notice given was oral. The evidence is conflicting in this respect, but the planning commission deemed the notice actually given as sufficient to meet the condition and approved the final map.

The judgment is reversed with directions to the court below to let the peremptory writ of mandate issue as prayed for.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied March 1, 1952.