[Civ. No. 18886. First Dist., Div. Two. Mar. 7, 1960.]

CITIZENS UTILITIES COMPANY OF CALIFORNIA (a Corporation), Appellant, v. SAN LORENZO VALLEY COUNTY WATER DISTRICT, Respondent.

Bacigalupi, Elkus & Salinger for Appellant.

Floyd R. Eichelberger, Kirkbride, Wilson, Harzfeld & Wallace and Peggy L. McElligott for Respondent.

PAULSEN, J. pro tem.*—This is an appeal from a judgment declaring valid certain revenue bonds authorized at an election held August 13, 1957. The case was submitted to the trial court on an agreed statement of facts. It appears that appellant is a public utility water corporation operating water distribution systems in various parts of California, one of them being in Santa Cruz County. Respondent is a water district in that county organized under the County Water District Law (Wat. Code, div. 12, §§ 30000-33901, inclusive).

With the idea of acquiring appellant's property, the directors of respondent district, acting under the County Water District Law, held elections on March 27, 1945 and December 3, 1946, to secure authority to issue general obligation bonds. Both elections ended in failure. A third attempt was made by an election held February 8, 1955, under the Revenue Bond Law of 1941. This also failed.

Effective October 1, 1949, sections 31416 and 32858 of the Water Code were added to the County Water District Law. These sections provide as follows:

''§ 31416. Whenever the electors of a district which has no bonded indebtedness, is not operating a water system, and has not bona fide contracted for the construction of an adequate water system for the district, have refused to authorize the issuance of bonds at three elections, the last of which was held in 1948 or thereafter, no further bond elections shall be held until the question of dissolution has been submitted to the electors as provided in Section 32858 of this division.''

''§ 32858. Whenever the electors of a district which has no bonded indebtedness, is not operating a water system, and has not bona fide contracted for the construction of an adequate water system for the district, have refused to authorize the issuance of bonds at three elections, the last of which was held in 1948 or thereafter, the board shall submit the question of dissolution of the district to the electors at the next

---

*Assigned by Chairman of Judicial Council.

general or special election following the last of the said bond elections.

"A petition for dissolution shall not be required for the submission of the question of dissolution in such instance. All other proceedings with regard to such dissolution shall be conducted as provided in this chapter."

On the same date, October 1; 1949, the Revenue Bond Law was amended and, appellant claims, thereby made sections 31416 and 32858 applicable to bond elections of all kinds.

Without first submitting the question of dissolution of the district to its electors, an election was held August 13, 1957, under the Revenue Bond Law and the required affirmative vote was secured. The district then has no bonded indebtedness, was not operating a water system, and had not bona fide contracted for the construction of an adequate water system.

Appellant brought this action on March 10, 1958, contending that the election of August 13, 1957, was invalid because sections 31416 and 32858 are mandatory; that without first complying with them, no valid election could be held to secure authority to issue either general obligation bonds or revenue bonds. It argues further that the Validating Act of 1957 was ineffective because the election was void *ab initio* and could not be resuscitated by curative legislation.

Respondent has at all times contended that sections 31416 and 32858 were not intended to and they did not encompass all four elections, that they apply solely to general obligation bond proceedings taken under chapter 2, part 6, of the County Water District Law, of which they are a part. Further, respondent maintains that the Second Validating Act of 1957 is effective to cure the defects if any exist. The trial court agreed with respondent on both points and rendered its judgment accordingly.

On September 20, 1957, the directors of the district determined that the public interest and necessity required respondent to acquire all of appellant's lands, property and rights used or useful in obtaining, storing, treating, disposing of and distributing water within or for respondent district, and thereupon authorized the institution of an eminent domain proceeding to that end. Thereafter, respondent filed a petition with the State Public Utilities Commission asking the commission to fix and determine the just compensation which respondent should pay appellant for its water system in the event of condemnation.

The commission thereafter ordered appellant to appear before it and to show cause why the commission should not proceed to fix the just compensation as prayed. On March 10, 1958, appellant filed its complaint herein. At the hearing on said order of the commission, appellant moved to hold the valuation proceedings in abeyance until the trial court could render a declaration of rights in this proceeding. The commission determined to go forward with the utility valuation subject to conditions precedent not herein involved.

The first question presented is one of legislative intent. Appellant argues that the Water Law and the Revenue Bond Law were interrelated for reasons hereafter discussed; that sections 31416 and 32858 are unqualified and make no distinction between general obligation bonds and revenue bonds, and, therefore, "[i]f the statute announces a general rule and makes no exceptions thereto, the courts can make none." (*Stockton Theatres, Inc.* v. *Palermo,* 47 Cal.2d 469, 476 [304 P.2d 7].)

As originally enacted, the County Water District Law contained no specific reference to revenue bonds and sections 31416 and 32858 were not included in the act. As originally enacted in 1941, the Revenue Bond Law was designated the "Sanitation and Sewer Revenue Bond Act of 1941." (Stats. 1941, ch. 965, § 1.) In brief, the latter act authorized certain defined municipalities to acquire or to construct, improve, operate and maintain within and without municipal boundaries specifically defined "enterprises" and to issue revenue bonds in order to raise funds necessary therefor. On the effective date of the Revenue Bond Law, July 15, 1941, the term "municipality" as used therein referred only to a "municipal or public corporation or district howsoever named or designated, which under the laws of this State is now or may hereafter be authorized to acquire, construct, own or operate either a sanitation system or a sewer system or both." (Stats. 1941, ch. 965, § 2a.) A county water district did not have power to operate sanitation or sewer systems on that date. The Revenue Bond Law expressly provided that the term "enterprises" as used therein should not include "systems, plants, works or undertakings used or to be used in connection with . . . the production, transmission and distribution of water for public or private uses"—a power which a district did enjoy. The result was that a county water district could not take advantage of the Revenue Bond Law provisions for any purpose.

In 1949 section 31100 was added to the Water Code and reads: "A district may acquire, construct, and operate facilities for the collection, treatment and disposal of sewage, waste and storm water of the district and its inhabitants."

Section 54301 of the Revenue Bond Law provides that:

"This Chapter is full authority for the issuance of bonds for the acquisition, construction, or improvement of any enterprise pursuant to this chapter."

Section 54309 then read: " 'Enterprise' means a system, plant, works, or undertaking used for or useful in the collection, treatment, and disposal of waste, refuse, and garbage, or of sewage, waste, and storm water; or used for or useful in obtaining, conserving, treating, or disposing of water for public and private uses. It includes all parts of the enterprise, all appurtenances to it, and lands, easements, rights in land, water rights, contract rights, franchises, approaches, dams, reservoirs, garbage trucks, equipment, dumps, garbage disposal plants and incinerators or other disposal facilities, sewage treatment plants, sewage disposal plants, intercepting and collecting sewers, outfall sewers, trunk, connecting, and other sewer and water mains, filtration works, pumping stations, water supply, storage and distribution facilities and equipment."

Appellant contends that the Legislature, by amending the Sanitation and Sewer Revenue Bond Act in 1949, necessarily intended to make revenue bond procedures available to county water districts; that the only logical explanation for making that amendment and sections 31416 and 32858 effective on the same date is that the Legislature thereby intended to make the limitations of those sections apply to revenue bonds as well as general obligation bonds. It argues further that the Legislature could not have intended to place such a restriction on general obligation bond elections and at the same time permit water districts to escape from those restrictions by resorting to revenue bond elections.

Respondent answers these arguments with the declaration that there is another explanation, equally logical and more persuasive, and one that points to a different intention on the part of the Legislature. It quotes from *Sargent* v. *Shumaker,* 193 Cal. 122 at page 127 [223 P. 464] : " " 'General words in a legislative act are often, where the sense requires it, and in furtherance of the intention, to be taken distributively, *reddendo singula singulis*. They are thus applied to the subject

matter to which they appear by the context most properly to relate, and to which they are really most applicable.' '' It quotes further from *Levy* v. *Superior Court*, 15 Cal.2d 692 at page 698 [104 P.2d 770, 129 A.L.R. 956] : ''The courts are not justified in defining the term in its broadest sense when obviously to do so would not be within the legislative intent.''

With these rules of construction in mind, respondent argues that the bonding provisions of the Water District Law, including sections 31416 and 32858, cannot be construed to refer to revenue bond elections.

With the exception of article 7, which was not added to the Water District Law until 1951, all of the references in chapter 2 of part 6 of that act are to the incurring of a bonded ''indebtedness'' and these include the sections immediately preceding and following section 31416.

Of course, it is also necessary to consider section 32858. Most of that section is identical with section 31416. Its only additional effect is to specify the time of submission of the question ''. . . at the next general election following the last of the said bond elections.'' The reason for the insertion of this provision in two places in division 12 is self-evident—neither the general obligation bond authorization provisions nor those relating to various circumstances of dissolution would be complete without its presence.

As it is impossible to ignore the meaning given to the words ''bond elections'' in section 31416 by the other sections which completely surround and thereby delineate it, so it would be impossible to give any different or broader meaning to those same words in section 32858. Each relates solely to elections relative to incurring an indebtedness. ''Words used in an ordinary sense in one part of an enactment are to be construed in the same sense in another in the absence of express definition.'' (*Shorb* v. *Barkley*, 108 Cal.App.2d 873, 877 [240 P.2d 337].)

The question of what constitutes ''an indebtedness,'' insofar as that term is used in section 18 of article XI of the California Constitution, has been settled by the decisions in *City of Oxnard* v. *Dale,* 45 Cal.2d 729 [290 P.2d 859] and cases there cited. It was there held that the constitutional provision limiting the amount of indebtedness which a city or other political subdivision or agency may incur, was not violated by the issuance of revenue bonds or obligations which are payable solely from a special fund, provided the govern-

mental body is not liable to maintain the special fund out of the general fund, or by tax levies, should the special fund prove insufficient.

The Revenue Bond Law provided:

"§ 54428. The general fund of the local agency is not liable for the payment of the bonds or their interest."

"§ 54429. The credit or taxing power of the local agency is not pledged for the payment of the bonds or their interest."

"§ 54430. The holder of the bonds or coupons shall not compel the exercise of the taxing power by the local agency or the forfeiture of its property."

"§ 54431. The bonds and interest are not a debt of the local agency, nor a legal or equitable charge, lien, or encumbrance, upon any of its property, or upon any of its income, receipts, or revenues except the enterprise revenues pledged to their payment."

"§ 54432. Every bond shall recite in substance that the bond and interest on the bond is payable solely from the revenues pledged to their payment and that the local agency is not obligated to pay them except from the revenues of the enterprise."

We see no reason for not applying the doctrine of the Oxnard case to the interpretation of the Water District Law. That case was decided after the enactment of sections 54428 et seq., mentioned above, but the principle has been recognized in *In re California Toll Bridge Authority*, 212 Cal. 298 [298 P. 485] as early as 1931. It appears that the Legislature had that case clearly in mind when those sections were adopted, and intended thereby to draw a sharp distinction between the effect of issuing revenue bonds and the effect of issuing general obligation bonds to secure an indebtedness. The recognition of this distinction would account, in part, for the placing of section 31416 in the middle of sections dealing with indebtedness, and the failure to insert corresponding provisions in the Revenue Bond Law. Each act—the Water District Law and the Revenue Bond Law—as far as bonds are concerned is complete in itself. Each sets forth fully its own procedural requirements, and is not dependent on the other.

If the grant of power to water districts, above mentioned, to operate sewer facilities, actually had the effect of making the Revenue Bond Law available to water districts, it appears that the Legislature was either unaware of it or had grave

doubts about it, for in 1951, two years after sections 31416 and 32858 had been added to article 3, part 6, and article 1, part 8, three new sections were added.

Two of these constitute article 7 of the Water District Act and read:

"§ 31480. *Subject to the provisions of this article,* a district may borrow money to provide funds to pay all costs of any public improvement authorized by this part and may issue revenue bonds to evidence the indebtedness created by such borrowing. (Italics added.)

"Such revenue bonds shall constitute special obligations and evidence a special indebtedness of the district which shall be a charge upon, and payable, as to the principal thereof, interest thereon, and any premiums upon the redemption of any thereof, solely from, such revenues and funds as are specified therein and in the proceeding for their issuance. They shall not constitute general obligations of the district and they shall neither constitute obligations nor evidence of any indebtedness of any other public agency of which the district may be a part, or of the State.

"All such bonds shall recite upon their face the substance of the preceding portions of this section and shall also recite upon their face that they are issued under this article."

"§ 31481. Revenue bonds under this article shall be authorized, issued and sold in the same manner as are revenue bonds of irrigation districts under Division 11 of this code and shall in all respects conform to the provisions of that part as near as such provisions can be made applicable."

The third section added to the Water Law was section 31030 which specifically made the Revenue Bond Law available to water districts, with certain exceptions that do not concern us here.

It therefore appears that two years after the enactment of sections 31416 and 32858 and the amendment of the Revenue Bond Law, the Legislature, by specific additions to the Water District Law, made two revenue bond procedures available to the districts. Section 31030 does not mention the two sections in question and article 7, which does not include them, impliedly made them inapplicable by the wording of the opening sentence. If this is true, it is not reasonable to believe that they were intended to apply to proceedings under the Revenue Bond Law of 1941.

Considering the references to "indebtedness" in the Water

District Law, the location of sections 31416 and 32858, the timing of the amendments, the implications of the opening sentence of article 7, and the radically different consequences that can result from the issuance of general obligation bonds and revenue bonds, we are of the opinion that the two sections in question were intended to apply to general obligation bond elections only.

If the foregoing conclusion is correct, it was not necessary, because of the points raised here, to validate the bonds issued pursuant to the election of August 13, 1957, and the effect of the curative act need not be discussed.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.