[Crim. No. 7216. Second Dist., Div. Three. Jan. 30, 1961.]

THE PEOPLE, Respondent, v. MILTON KOOMER, Appellant.

Russell E. Parsons and Harry E. Weiss for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FORD, J.—The appellant Milton Koomer and Freeman Earl Buck were accused of the crime of forgery. (Pen. Code, § 470.) The information contained two counts. The documents alleged to have been involved in each offense were described as "a certain credit card and credit slip." The appellant waived his right to trial by jury. The case of the prosecution was submitted on the transcript of the testimony given at the preliminary examination and the exhibits there received in evidence. The appellant did not testify in his own behalf. He was found guilty as charged. He has appealed from the judgment.[1]

The sole contention made by the appellant is that, insofar as he is concerned, the corpus delicti was not established without the use of his statements to the police. It is, therefore, necessary to summarize the evidence.

. Paul Porter, assistant regional accounting manager for Standard Oil Company of California, testified that in the course of the preparation of new credit cards for customers toward the end of August, 1959, it was found that a number were missing, including a card in the name of Harry A. Turrell bearing a particular number. The equipment which was used to emboss the cards was leased from another company which furnished servicemen. One of such servicemen was Freeman Earl Buck, who was assigned to the repair service on the night shift for a period of time. The witness was shown a credit invoice (No. NO90508) in which the name of the customer was stated to be Harry A. Turrell; he identified the credit-card number on the invoice as being that assigned to Mr. Turrell.

Gene Lowden testified that he was working at a service station on the corner of Vermont and Olympic in Los Angeles

---

[1]While it is stated in the notice of appeal that the appeal is from "the judgment and sentence," the judgment in a criminal case is the sentence; "sentence" is but another term for "judgment" under such circumstances. (*People* v. *Carlson*, 177 Cal.App.2d 201, 207 [2 Cal.Rptr. 177]; *People* v. *Perkins*, 147 Cal.App.2d 793, 797-798 [305 P.2d 932]; *People* v. *Tokich*, 128 Cal.App.2d 515, 519 [275 P.2d 816].)

on September 21, 1959. He recognized invoice NO90508 as being the invoice used when he sold three tires and a set of spark plugs to a customer on the evening of that day. That customer presented a credit card bearing the name Turrell and the witness used the card to imprint that name on the invoice. The customer, who was an elderly man, signed the invoice and took the merchandise with him. The witness could not identify anyone in the courtroom as having been the customer.

Frank Ward testified that on October 6, 1959, while he was working at a service station, a man drove into the station and purchased gasoline and four tires. A credit card in the name of Harry A. Turrell was presented, which card was used to imprint the name of the customer on the invoice. The customer signed the invoice and took the merchandise away. However, before the tires were delivered to the customer, the witness telephoned the Standard Stations office and stated the name of the customer; he did so because the man did not want the tires mounted on his automobile whereas the company policy was that there should be no delivery of unmounted tires.

Harry A. Turrell testified that he did not make or authorize the purchases of September 21 and October 6, 1959. He had not seen the defendants before the time of his testimony. The invoices did not bear his signature.

Leonard Kamp,[2] a police officer for the city of Los Angeles, testified that on October 6, 1959, he received a call from the Security Office of the Standard Oil Company with respect to a person purchasing four unmounted tires under the name of Turrell. Police officers proceeded to the service station and observed a Studebaker automobile. They followed the automobile to a parking lot at the rear of a building on Vermont Avenue. The driver walked away from the car and, about one-half hour later, returned with the appellant. The two men took four tires which were wrapped in paper and entered the building. The witness then entered the front door of the premises, a bar, and placed the appellant and the other man under arrest. Underneath a counter the officers found several Standard Oil Company credit cards. The appellant stated that he had received these cards about two or three weeks before that day from a man by the name of Buck who was employed across the street in "possibly the Signal

---

[2]The words hereafter quoted in the summary of the testimony of the witness Kamp are the words used by the witness.

or some oil company office.'' Buck had come into the bar on several occasions for dinner and beer. The appellant stated that he learned that Buck was involved in the servicing of equipment used in connection with credit cards; he asked Buck if he could have some of such cards and on about two or three occasions he was given the cards the officers found for which he gave Buck "maybe $15 or $20 and a few beers''; he thereafter gave a credit card to the other man, Potter, and received some merchandise. The witness then went downstairs into a store room and observed four tires which were wrapped in paper. The appellant said that these were tires that he had asked Potter to get for him with a credit card under the name of Turrell and to bring back to his place whereupon he would give him "maybe $20 or $30 for them''; the appellant intended to resell the tires. The officer then went further back into the storeroom and observed another tire which was wrapped in paper. The appellant said that the same person had given him that tire together with two other tires about two weeks prior to that time and that the other two tires were on the appellant's automobile. Later that night, at the police station when Buck was present, the appellant said that Buck was the person who had given him the credit cards. The officer testified that all of the appellant's statements were made freely and voluntarily.

Under the applicable law, the evidence clearly supported a determination by the trial court that on September 21, 1959, and again on October 6, 1959, the crime of forgery was committed by the man who, after presenting the credit card, signed the invoices. (*People* v. *Morgan,* 140 Cal.App.2d 796, 800 [296 P.2d 75]; *cf. People* v. *Stevens,* 175 Cal.App.2d 123, 127 [345 P.2d 582]; see *People* v. *McKenna,* 11 Cal.2d 327, 332-333 [79 P.2d 1065].)

The identity of the perpetrator of a crime is no part of the corpus delicti. (*People* v. *Cullen,* 37 Cal.2d 614, 624 [234 P.2d 1]; *People* v. *Leary,* 28 Cal.2d 740, 745 [172 P.2d 41]; *People* v. *Whitsett,* 160 Cal.App.2d 652, 657 [325 P.2d 529]; *People* v. *Mainhurst,* 67 Cal.App.2d 882, 884 [155 P.2d 843].) This rule is applicable in the present case where the position of the prosecution is that the accused was a guilty participant in each offense although he was not present at the place of its commission. (*People* v. *Felt,* 98 Cal.App.2d 137, 139 [219 P.2d 54]; *People* v. *Cowling,* 6 Cal.App.2d 466, 471 [44 P.2d 441].) As this court said in *People* v. *Johnson,* 146 Cal.App.2d 302, at page 304 [303 P.2d 615]: ''When the

corpus delicti is established by evidence other than extra-judicial statements of the defendant, the connection of the defendant with the crime may be proved by statements made by him. (*People* v. *Mainhurst,* 67 Cal.App.2d 882, 884 [155 P.2d 843].)'' Under section 31 of the Penal Code,[3] a person is a principal in a crime, although he does not directly commit the act constituting the offense, when he aids and abets in its commission or, not being present, advises and encourages its commission. (*People* v. *Weitz,* 42 Cal.2d 338, 349 [267 P.2d 295].) The evidence adequately supported the determination of the court that the appellant was a culpable participant in each of the crimes; he was a principal in each offense and punishable as such. (See *People* v. *Keller,* 165 Cal.App.2d 419, 429 [332 P.2d 174]; *People* v. *Etie,* 119 Cal.App.2d 23, 28 [258 P.2d 1069]; *People* v. *Colton,* 92 Cal.App.2d 704, 710 [207 P.2d 890]; *People* v. *Cowan,* 38 Cal.App.2d 231, 239 [101 P.2d 125]; *People* v. *Smith,* 96 Cal.App. 373, 378-379 [274 P.2d 451].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

---

[3]Section 31 of the Penal Code is in part as follows: ''All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed.''