[Crim. No. 8145.   Second Dist., Div. Three.   Mar. 8, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH GONZALES LOPEZ, Defendant and Appellant.

Herbert E. Selwyn, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Stanley X. Cook, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—By an indictment the defendant Lopez was accused of the crime of violation of section 11503 of the Health and Safety Code.[1] It was also alleged that at a time prior to that offense he had been convicted of the crime of violation of section 11500 of the Health and Safety Code, a misdemeanor. In a jury trial, in which he was represented by a deputy public defender, he was found guilty. At the time set for the imposition of judgment the allegation as to the prior offense was found to be true. His motion for a new trial was denied. Probation was denied and he was sentenced to the state prison. The appeal is from the order denying the motion for a new trial and from the judgment.

Evidence which gave support to the case of the People will be stated. Milton J. Reade, a Deputy Sheriff for the County of Los Angeles who was assigned to the narcotics detail, testified that he was introduced to the defendant by an informant on February 4, 1961. The defendant said he wanted the witness and the informant to "go in partner-

---

[1] Section 11503 of the Health and Safety Code is as follows: "Every person who agrees, consents, or in any manner offers to unlawfully sell, furnish, transport, administer, or give any narcotic to any person, or offers, arranges or negotiates to have any narcotic unlawfully sold, delivered, transported, furnished, administered, or given to any person and then sells, delivers, furnishes, transports, administers, or gives, or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered, or given to any person  any other liquid, substance, or material in lieu of any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years."

ships'' with him in the purchase of a kilo of marijuana. The three men were to meet again at the same location at 7 o'clock in the evening. At the time set the meeting was held. The three men then went to another location. The defendant told the informant to bring the money and the witness gave the informant $45. The defendant and the informant then departed. Later the informant returned. But the defendant did not come back to the place where the witness, Officer Reade, was waiting for him and the witness was unable to locate him that evening. Officer Reade never received any marijuana from the defendant.

The officer next saw the defendant Lopez on February 23, 1961, at which time Lopez was with the codefendant Ortiz. The defendant Lopez said that he would make restitution of the witness' money or he would have the narcotics for him on the following day, February 24, 1961. The witness asked Lopez if the person accompanying him (another deputy sheriff) could purchase a ''gram.''[2] Lopez replied that the only possible source of which he knew was in Sun Valley and that a gram would cost $25. The officers entered Lopez' automobile and the four men drove to several places. Thereafter a conversation occurred which Officer Reade related as follows: ''A. The defendant Lopez then stated, 'If you guys really want to score, come back tonight about seven. I won't be here, but Oscar will,' indicating the defendant Ortiz. At this time we had driven back by the defendant Lopez—we had been driven back by him to the vicinity of Kewen and Kalisher, and at this time the defendant Ortiz stated, 'Be sure you're here at seven. I'll have the stuff on me. I'll be here for sure.' I then asked the defendant Ortiz, 'What do they call you, so we can ask for you?' He said, 'They call me Oscar, but I'll be here.' ''

At approximately 7:05 o'clock that evening the officers returned to the designated location and met Ortiz, who said: ''I've got it with me. The guy with the money follow me.'' Officer Reade went to a point about 50 feet from his automobile and Ortiz ''exhibited ten number 5 gelatin capsules containing a whitish powder, contained in a yellowish tissue piece of paper.'' The officer gave Ortiz $25 and received the capsules.

---

[2] With respect to the meaning of the word ''gram'' to those who are engaged in the narcotic traffic, the witness testified that it ''generally means ten No. 5 gelatin capsules containing heroin.''

Martin Klein, a forensic chemist employed by the Sheriff of the County of Los Angeles, testified that he examined the contents of each of the 10 small gelatin capsules. His opinion was that the white powder in each of the capsules contained a derivative of barbituric acid, probably sodium pentobarbital. The powder was not opium or a derivative of opium.

The defendant Lopez testified in his own behalf. He admitted that he saw Officer Reade on an occasion which was about the early part of February 1961. Approximately two or three weeks later he again saw him. The officer said that he wanted to purchase a gram of heroin and the defendant Lopez replied that he did not know anyone who had heroin. The two men, together with Ortiz and the other officer, went in an automobile driven by Lopez to another location. A stop was made and Lopez and Ortiz left the car and later returned. But the defendant Lopez never told the officers to come back later in the evening and he would see that they were ''taken care of.'' On cross-examination he said that he knew what heroin was.

The codefendant Ortiz was a witness in his own defense. The first time he saw the officers was on February 23, 1961, an occasion when he was with Lopez. The four men drove to Sun Valley and parked. He and Lopez left the automobile and later returned. Nothing was said about narcotics. A week or so later Officer Reade came to his house, pretending that he was sick and saying that he needed a ''fix'' and wanted to ''score.'' He asked Ortiz to sell him some heroin. Ortiz told him he was ''not involved in narcotics,'' but he did give him 10 sleeping pills. Ortiz testified that he had learned the terms ''fix'' and ''score'' from personal experience. He had found the pills or capsules in a restroom of a theater. The capsules were white in color and looked like the capsules which had been received in evidence. They were wrapped in tissue paper. He showed them to a friend who ''was on narcotics, too.'' The friend opened one and tasted the substance and then said that he thought they were ''sleeping pills or pain pills.'' Ortiz further testified that his personal belief was that the capsules did not contain heroin. He also testified as follows: ''Q. Now, you have seen capsules with heroin before, haven't you? A. Yes, sir. Q. They look like those caps there, don't they? A. Well, I never could tell the size of the capsules. I don't know their numbers, or anything like that. Could be a little bit bigger, or a little bit smaller. Q. Those look like they might be a capsule with

heroin in it, isn't that right? A. Well, with the powder in it, yeah. Q. Do you remember ever seeing anything else in a capsule like that, white powder? A. What do you mean? Q. Did you ever see another capsule like that, with a white powder in it, except heroin, and those before you? A. Well, I seen them like that, too. Q. What did they have in them? A. Well, barbiturates; something like that. . . . Q. You have never seen a barbiturate in a white capsule, have you? A. Yes, I have. Q. When? A. When? Well, a lot of times.''

█ █ The defendant Lopez contends that the evidence was insufficient to support the conviction because it was not shown that the substance sold was not a narcotic. But there is no merit in that contention. The forensic chemist testified that it was a derivative of barbituric acid. Such a substance is not within the definition of ''narcotics'' contained in section 11001 of the Health and Safety Code which governs the interpretation of section 11503 of the same code. Rather, it is a hypnotic drug within the definition of a ''dangerous drug'' found in section 4211 of the Business and Professions Code. (See *Garner* v. *Texas State Board of Pharmacy* (Tex. Civ. App.) 304 S.W.2d 530, 534; *People* v. *Wittpen,* 75 N.Y.S.2d 670, 671.)

█ The assertion that the evidence was insufficient to support the conviction is also placed on the ground that there was a lack of evidence that the defendant Lopez knew the nature of the substance in the capsules which Officer Reade testified he received from Ortiz. From the résumé of the testimony of Ortiz hereinabove set forth it is clear that if Ortiz delivered the capsules to Officer Reade, which we must assume the jury believed he did, then it was a reasonable inference that Ortiz was well aware that the substance he was delivering was not the narcotic, heroin, which Lopez had told the officer would be delivered by Ortiz. There was evidence that Lopez personally participated in the arrangement for the sale and delivery of the heroin and was acting in concert with Ortiz. █ It was not necessary to show by direct evidence that he was aware of the true nature of the transaction; that matter could be established by circumstantial evidence, as was done in the present case. (See *People* v. *Robarge,* 151 Cal.App.2d 660, 668 [312 P.2d 70] ; *People* v. *Lunbeck,* 146 Cal.App.2d 539, 541 [303 P.2d 1082].) Because of his participation in the matter, the defendant Lopez was liable as a principal even though he was not present at the time Ortiz delivered the capsules and received the money from the

674

officer. (Pen. Code, § 31; see *People* v. *Koomer,* 188 Cal.App. 2d 676, 680 [10 Cal.Rptr. 607]; *People* v. *Dalton,* 172 Cal. App.2d 15, 21 [341 P.2d 793].)

The defendant Lopez contends that the trial court committed error in giving instructions to the jury relating to the subject of statements made by a defendant because such instructions were inapplicable to any evidence received as to Lopez.[3] He argues that "the effect of the instructions would, in all probability, be to confuse the jury into thinking that there were confessions or admissions or other statements made in which appellant implicated himself in the commission of [the] offense." However, the instructions were correct statements of law applicable to the evidence of statements made by the codefendant Ortiz[4] and the record does not disclose that the defendant Lopez requested that the instructions be limited or clarified in any way, as he might have done in the trial court. (See *People* v. *Robinson,* 180 Cal. App.2d 745, 752 [4 Cal.Rptr. 679].) The defendant Lopez has failed to show any prejudice suffered by him arising from the criticized instructions and, therefore, his contention is untenable. (See *People* v. *Tannehill,* 187 Cal.App.2d 402, 406-407 [9 Cal.Rptr. 675].)

---

[3]The challenged instructions were as follows: "In determining the innocence or guilt of a defendant you must not consider any statement of a defendant relative to the offenses charged, made after the alleged commission of such offenses unless such statement or statements was voluntarily made. Although the court has admitted evidence tending to show that a defendant made such statement or statements you must disregard them entirely unless you yourself by your own weighing of all the evidence, your own judging of the credibility of witnesses and your own reasonable deductions conclude that the alleged statement or statements not only were made but were voluntary."

"The law of this state admonishes you to view with caution the testimony of any witness which purports to relate an oral statement of a defendant made after the alleged commission of the offense or offenses with which such defendant is charged and relating to said offense or offenses."

[4]Such evidence was received only as against Ortiz and the jury was so instructed. Moreover, the court gave the following instructions:

"Where evidence has been received against one of the defendants but is not received as against the other, the jury may consider such evidence only as against the defendant against whom it was permitted to be received. It may not be considered by the jury for any other purpose, or against any other defendant."

"Where evidence has been received of a statement by one of the defendants after his arrest and in the absence of his codefendant, such statement can be considered only as evidence against the defendant who made such statement and cannot be considered for any purpose as evidence against his codefendant."

"The court has endeavored to give you instructions embodying all

■ The next contention made is that the trial court should have instructed the jury that one of the elements of the offense charged which had to be proven before Lopez could be convicted was his "knowledge of the non-narcotic substance delivered by Ortiz outside the presence" of Lopez. But under the circumstances of this case there was no error because the court, in addition to defining the offense described in section 11503 of the Health and Safety Code, gave the following instruction: "All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who *knowingly* and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof." (Emphasis added.) The jury was thus sufficiently informed that before it could convict the defendant Lopez, it was necessary to prove not only that he aided in the commission of the offense but did so with a guilty knowledge that a nonnarcotic substance was to be delivered to the officer by Ortiz. (See *People* v. *Johnson,* 99 Cal.App.2d 717, 732-733 [222 P.2d 335]; *People* v. *Etie,* 119 Cal.App.2d 23, 28 [258 P.2d 1069].)

■ It is claimed that the testimony of Officer Reade with respect to the transaction of February 4, 1961, in which the officer surrendered $45 but received no marijuana in return, should have been excluded. It is asserted that it was highly prejudicial. But it is not necessary to give further consideration to that contention since no objection thereto was made at the trial and the defendant cannot now question the propriety of its admission. (*People* v. *Glatman,* 52 Cal.2d 283, 286 [340 P.2d 8].)

■ One contention remains for consideration. The defendant Lopez asserts that the trial court should have granted his motion to strike the allegation in the indictment that he had been convicted of the crime of violation of section 11500, Health and Safety Code, a misdemeanor.[5] It

rules of law that may become necessary in guiding you to a just and lawful verdict. The applicability of some of these instructions will depend upon the conclusions you reach as to what the facts are. As to any such instruction, the fact that it has been given must not be taken as indicating an opinion of the court that the instruction will be necessary or as to what the facts are. If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction."

[5]Section 17 of the Penal Code is in part as follows: "When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall

is true that section 11503 of the Health and Safety Code contains no provision for greater punishment upon conviction if the defendant has suffered a prior conviction for a narcotic offense, whereas such a provision is found, for instance, in section 11501 of that code and pursuant thereto any of the designated prior convictions must be charged in the indictment or information. But we need not determine whether it was necessary or proper to allege in the indictment that there had been such prior misdemeanor conviction because, as is hereinafter discussed, the defendant Lopez suffered no prejudice by reason of such allegation.

Proof of the misdemeanor conviction was received in the absence of the jury and no reference was made to it at anytime in the presence of the jury. A finding that the allegation as to the prior conviction was true was made by the court at the time set for imposition of judgment. The verdict of guilty was returned on August 23, 1961, and the defendant Lopez was sentenced on October 31, 1961. Prior to the effective date of the 1961 amendment, section 11715.6 of the Health and Safety Code provided as follows (Stats. 1959, ch. 1112, p. 3196, § 13): "In no case shall any person convicted of violating Sections 11500, 11501, 11502, 11503, 11530, 11531, 11532, 11540, 11557, or 11715, or of committing any offense referred to in those sections, be granted probation by the trial court, nor shall the execution of the sentence imposed upon such person be suspended by the court, if such person has been previously convicted of any offense described *in this division* except Section 11721, or has been previously convicted of any offense under the laws of any other state or of the United States which if committed in this State would have been punishable as an offense described in this division except Section 11721." (Emphasis added.) The amendment of that section made in 1961 became effective on September 15, 1961 (Stats. 1961, ch. 274, p. 1308, § 12.), but the only portion of the change made thereby which need be noted here is that the word "felony" was inserted before the word "offense." However, in 1961, section 11504 was added to the Health and Safety Code (Stats. 1961, ch. 274, p. 1304, § 5) and is as follows: "As used in this article 'felony offense,' and offense 'punishable as a felony' refer to an offense for which the law prescribes imprisonment in the state prison as either an alternative or the sole penalty, regard-

---

be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison."

less of the sentence the particular defendant received." At the same time section 11533 (Stats. 1961, ch. 274, p. 1307, §11), which is in the same language as section 11504, was added to article 2, which is concerned with the subject of marijuana. Sections 11504 and 11533 and the amendment of section 11715.6 are part of the same enactment, known as the Regan-Dills Act. (Stats. 1961, ch. 274.) All of those sections are in the same division of the Health and Safety Code. There is no reason for an assumption that the Legislature intended that "felony offense" should have a meaning in section 11715.6 (which is in article 4) different from that which it has when used in the provisions of the articles in which sections 11504 and 11533 are found. (See *Shorb* v. *Barkley*, 108 Cal.App.2d 873, 877 [240 P.2d 337]; *Citizens Utilities Co.* v. *San Lorenzo Valley County Water Dist.*, 178 Cal.App.2d 635, 640 [3 Cal.Rptr. 280].) Consequently, the amendment made in 1961 made no change in the law with respect to the defendant Lopez' eligibility for probation and a denial of probation deprived him of no substantial right. (See *In re Cowen*, 27 Cal.2d 637, 641 [166 P.2d 279]; cf. *In re Nachnaber*, 89 Cal.App. 530 [265 P. 392].)

Under the governing law the court could not grant probation to the defendant Lopez. Whether a finding that the charge of the prior conviction was true was embodied in the judgment or whether the fact of such conviction was noted in the report of the probation officer, that matter was before the court and the court was bound to proceed in accordance with the applicable law as to eligibility for probation.[6] (See *People* v. *Brown*, 172 Cal.App.2d 30, 34 [342 P.2d 410]; *People* v. *Tell*, 126 Cal.App.2d 208, 209 [271 P.2d 568].)

The appeal from the order denying the motion for a new trial is dismissed. (Pen. Code, §1237.) The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 1, 1963.

---

[6]Not only was there a probation report before the court in the present case in which was noted the prior conviction, but under section 1203 of the Penal Code it was the duty of the clerk of the court, upon denial of probation, to "forthwith send a copy of the report and recommendations to the Department of Corrections at the prison or other institution to which the defendant" was delivered.